**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

LEAH D. GRIFFITH, et al.,

                Plaintiff,

v.                                    CIVIL ACTION NO.  2:08-cv-00823

CHAPMANVILLE HOME PLACE, INC., et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before the court is fourth-party defendant Boone Transporting & Tank Co., Inc.'s ("Boone") Motion for Summary Judgment [Docket 139].  This Motion is **DENIED**.

**I.  Background**

On June 10, 2008, Triad Financial Services, Inc. ("Triad") filed a complaint against Leah D. Griffith and Kevin Stavnicky, alleging that they had fallen behind on payments under a Manufactured Home Retail Installment Contract with Chapmanville Home Place, Inc. ("Chapmanville"), a mobile home retailer [Docket 1].  Triad was the servicing agent for the contract. Triad asserted breach of contract and unjust enrichment claims.

Griffith and Stavnicky raised several affirmative defenses to Triad's claims, and also filed a counterclaim [Docket 4].  They alleged that factory defects existed in the home they had purchased from Chapmanville at the time of sale; that improper repairs were made to the home prior to the sale; and that the home sustained damage during delivery.  They asserted claims for breach of contract and fraud against Triad, and included a claim for punitive damages.  Griffith and Stavnicky also filed a third-party complaint on June 23, 2008, against Chapmanville and Fairmont Homes, Inc.

("Fairmount"), the home's manufacturer, asserting fraud, breach of contract, negligence, breach of express and implied warranties, and a claim for punitive damages [Docket 5].

Thereafter, Chapmanville filed a fourth-party complaint against Boone Transporting & Tank Co., Inc. ("Boone") and Rick Sisson, d/ba/a R&J Mobile Home Movers, who contracted with Chapmanville to transport the home [Docket 17]. Chapmanville alleged that any damages to the home were caused by "the breach of contract, and/or breach of express or implied warranties and/or negligence" of Boone and Sisson. (Fourth-Party Compl. ¶ 5.)

By agreed order dated August 31, 2009, all claims asserted against Fairmont were dismissed with prejudice [Docket 79]. By Memorandum Opinion and Order dated May 24, 2010, the court granted a consent judgment between Triad, Griffith and Stavnicky, and dismissed with prejudice the claims and counterclaims these parties made against each other [Docket 136]. Triad is no longer a party to this case. The court also granted leave for Griffith and Stavnicky to file an amended third-party complaint directly against fourth-party defendants Boone and Sisson.

Boone now moves for summary judgment. Chapmanville opposes such motion. Griffith and Stavnicky, who had amended their second-party complaint to directly assert claims against Boone and Sisson, have not opposed Boone's motion.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

## III. Analysis

### A. *The Parties' Submissions*

There is little evidence for review on this motion, because the parties' submissions are defective. In its Memorandum in Support of Motion for Summary Judgment [Docket 140], Boone cites from deposition transcripts, but it has not filed the depositions with the court. The court is thus unable to consider this deposition testimony. *See* LR Civ. P. 7.1(a) ("All motions shall be . . . accompanied . . . by copies of depositions (or pertinent portions thereof), . . . and other such materials upon which the motion relies."); *see also Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*,

*Inc.*, 2008 WL 2937726, n.3 (S.D. W. Va. July 23, 2008) ("The deposition . . . was not attached to [the] motion for summary judgment, nor was it attached to any . . . subsequent briefing, and thus the court is unable to consider it.").

Chapmanville submitted a Response in Opposition [Docket 147], accompanied by a transcript of a deposition with Kevin Gillispie, the sole owner of Boone (Resp. Opp'n Mot. Summ. J., attach. 1 ("Gillispie Dep.")), and an expert report by George Porter (Resp. Opp'n Mot. Summ. J., attach 2). But "unsworn reports are inadmissible on summary judgment unless accompanied by affidavits or depositions swearing to their contents and conclusions." *Edens v. Kennedy*, 112 Fed. Appx. 870, 879 (4th Cir. Aug. 4, 2004) (unpublished per curiam). Thus, I may not consider Porter's report in deciding Boone's motion for summary judgment.

In sum, the only evidence for review is the transcript of the deposition of Kevin Gillispie. I turn to that evidence now.

B. *The Gillispie Deposition Transcript*

Gillispie testified that he was contacted by Chapmanville about moving the mobile home, and he originally told Chapmanville that he "didn't want no part" of the transport, because it was "a bad idea, that [the home] was too big for the hollow." (Gillespie Dep. 10.) Sisson then agreed to move the home if Gillispie helped him, so Gillispie agreed to move the back half and also to let Sisson use Gillispie's bulldozer. But Gillispie claims he then had further reservations when he realized the house was a damaged lot model. He told the salesman, "[t]hat is a damaged house. That's not going to handle the trip." (*Id.* at 12.) Still, Gillispie eventually "agreed to transport the back half that hadn't been damaged." (*Id.* at 14.) Gillispie observed the front half "had a belly in it"—it had "a bit of a sag" downward. (*Id.* at 94.)

Gillispie testified that the bulldozers "pulled it up to the top of the hill," and that he could not see any damage to the house during this process.  (*Id.* at 17.)  He admitted that he saw "some shingles messed up" that were damaged "going up a hollow on a tree," but testified that this was on the front half of the house.  (*Id.* at 18.)  Later, however, he indicated that the shingle damage might be on the back half.  (*Id.* at 76 ("It could be the back corner of the front half of it.  More than likely it's the front corner of the back half.").)  He also testified that he did not recall the back half of the house "ever going in the ditch or in the creek or anything like that," but the front half dropped "off the road at the culvert."  (*Id.* at 41.)  Gillispie testified that he saw no damage as a result of this fall.  (*Id.* at 43.)  He also admitted that although he transported the back half of the house, he assisted in the delivery of the front half as well. (*Id.* at 44.)  Boone charged Chapmanville $1,045.00 for delivery of the home, a sum which consisted of a flat $700 fee for home delivery, a $45 charge for site inspection, and a $300 charge for use of the bulldozer.  (*Id.* at 15.)

Boone asserts that "[a]ll of the claims . . . against Boone are based on [the parties'] ability to prove that Boone negligently caused damage to the home during delivery."  (Mot. Summ. J. 2.)  Boone avers that no "witness .. . has testified about any evidence of negligence against Boone" and "[t]here is no evidence in the record of this case that indicates that Boone was negligent in any manner nor is there any evidence that Boone's negligence proximately caused any damage to th[e] parties."  (Mem. Supp. Summ. J. [Docket 140] 5.)

Genuine issues of material fact preclude summary judgment.  Even assuming that all of the claims against Boone ultimately depend on evidence of its negligence, more than a scintilla of such evidence exists such that summary judgment is inappropriate.  Gillispie admits to joining—and accepting payment for—a moving job that he had serious reservations about.  He admits that the

portion of the house he was transporting may have been damaged in transit by scraping against trees. He was a leading member of a transport crew that appears to have caused or at least exacerbated damage to the house.

## IV.  Conclusion

Boone's Motion for Summary Judgment [Docket 139] is **DENIED**.  Accordingly, the Motion Hearing scheduled on Friday, July 9, 2010, at 10:00 a.m. is hereby cancelled.  The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.


ENTER:        July 7, 2010


Joseph R. Goodwin, Chief Judge